UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROBERT L. BOLDEN, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 2:14-cv-103-WTL-MJD |
| | ) |
| FEDERAL BUREAU OF PRISONS, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendants' Motion for Summary Judgment (Dkt. No. 99).[1] The motion is fully briefed, and the Court, being duly advised, **GRANTS** the Defendants' Motion for the reasons set forth below.

### I.  STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor.  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view

---

[1] The Plaintiff also has moved for summary judgment (Dkt. No. 102). That motion is **DENIED AS MOOT** in light of this Entry. The Defendants' Motion to Exclude the Expert Testimony of Dr. Stuart Friedman at Trial (Dkt. No. 116) likewise is **DENIED AS MOOT**, as is the Plaintiff's Motion for Leave to File Surreply to the Defendants' Reply Memorandum in Support of that motion (Dkt. No. 126).

the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to 'scour the record in search of evidence to defeat a motion for summary judgment.'" *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation omitted).

## II. SUMMARY OF FACTUAL ALLEGATIONS

The properly supported facts of record, viewed in the light most favorable to the Plaintiff, Robert L. Bolden, are as follows. Bolden, a death-row inmate at the United States Penitentiary in Terre Haute, Indiana, has filed this action seeking injunctive relief [2] for alleged violations of the Eighth Amendment. Bolden was diagnosed with type 1 diabetes when he was two years old, and his blood sugar levels have been unstable for most of his life. He also suffers from chronic kidney disease. Bolden alleges that the Federal Bureau of Prisons ("BOP") has acted with deliberate indifference to his serious medical needs. Specifically, Bolden argues that the Defendants have been and continue to be deliberately indifferent for (1) significantly deviating from established standards of medical care; (2) failing to investigate or correct issues with the provision of that medical care; and (3) failing to properly observe and train personnel to observe established BOP policy.

---

[2] Bolden has sufficiently alleged that the violations about which he complains are ongoing.

2

The BOP, an agency of the federal government, is named as a Defendant. The remaining named Defendants - - John Caraway, Complex Warden at Terre Haute FCC; William E. Wilson, M.D., clinical director at USP Terre Haute; Andrew Rupska, Health Services Administrator at USP Terre Haute; Melissa Bayless, Special Confinement Unit Manager at USP Terre Haute; Anthony Serrato, Food Service Administrator at USP Terre Haute; Charles E. Samuels Jr., Director of the Federal Bureau of Prisons; Paul M. Laird, BOP North Central Regional Director; and Paul Harvey, M.D., BOP North Central Regional Medical Director - - are named only in their official capacities.

### A.     Diabetes

Bolden suffers from type 1 diabetes, a serious condition. Without proper daily and routine treatment for his diabetes, as well as appropriate care and response, Bolden is at constant risk of death. While in the custody of the BOP, Bolden has suffered multiple episodes of hyperglycemia, a potentially deadly condition in which a diabetic patient's blood sugar is too high. Bolden also has suffered numerous episodes of hypoglycemia, a potentially deadly condition in which a diabetic patient's blood sugar is too low. Bolden has lost consciousness and had seizures during many of these hypoglycemic episodes.

The BOP has established Clinical Practice Guidelines (the "CPG"). The protocols state that "[i]nmates with poorly controlled diabetes or with other serious complications such as heart or kidney disease should be monitored closely by a physician, along with the patient's mid-level provider(s)." Dkt. No. 104-1 at 33.

Bolden's A1C level was 7.2 in December 2012 and remained at 7.2 through June 2015. The CPG states that the "A1C goal for type 1 diabetes is <7.0-7.5%." Dkt. No. 104-1 at 18. Dr.

Harvey, BOP North Central Regional Medical Director, indicated that the goal is 7, and the American Diabetes Association recommends A1C goals of less than 7.0.

In 2009, Bolden was issued his own personal glucometer to measure his blood sugar. He was instructed in the proper use of the equipment. Nurses check Bolden's blood sugar four times a day. Bolden also checks his own blood sugar up to ten additional times a day. In March 2015, Dr. Wilson, clinical director at USP Terre Haute, changed Bolden's long-acting insulin to insulin glargine (a/k/a Lantus), which is a better option for Bolden. In April 2015, Bolden reported to Dr. Wilson that he felt his diabetes was better controlled with the insulin glargine, that he had fewer low blood sugars than before, and that he had no "real high blood sugar now." Dkt. No. 101-31 at 7. Bolden has never submitted a request through the administrative remedy process to be given an insulin pump. Bolden does not request medical assistance when his blood sugar level tests high.

Between April 1, 2014, and May 18, 2015, Bolden had nine hypoglycemic episodes for which he received assistance from the medical staff. The most recent episodes were during the morning or noon hours after Bolden failed to eat. As long as Bolden's recovery from a hypoglycemic event is complete, hospitalization offers Bolden no benefits. Bolden is supplied with glucose tablets to self-rescue when his blood sugar levels are falling between meals. He is prescribed 30 tablets per month, and the prison pharmacy provides him with 10 tablets at a time. In March 2013 and March 2014, two different nurses administered rectal glucose to Bolden. In each instance, Bolden was nonresponsive at the time due to low blood sugar. But for the BOP's lack of expertise in its provision of medical care for diabetic inmates, Bolden would not be having hypoglycemic episodes that are as frequent or as severe.

Bolden's meals are brought to him by a staff nurse, who administers insulin to Bolden at the same time he is given his meals. His meals are scheduled to arrive during certain windows of time, but they are not always delivered during those times, particularly in the morning.[3] Nursing staff members have been trained and understand they are to provide Bolden with his meals and insulin at the same time every day, absent an emergency.

Bolden is seen by a nurse four times a day every day. Nurses who interact with Bolden write a visit note, which is always reviewed and co-signed by a physician. If the nurse's interaction is a significant event, such as the loss of consciousness in a hypoglycemic event, a physician is immediately notified.

In 2013, Bolden was seen three time by Dr. Wilson or another BOP doctor for a Chronic Care Clinic visit or other follow-up. In 2014, he was seen by a doctor four times, and in 2015, he was seen by a BOP doctor at least four times. When Bolden is seen by a mid-level provider, Dr. Wilson reviews and co-signs their notes. Bolden can be seen by a physician's assistant any time he puts in for a sick call. BOP nurses randomly check Bolden's blood pressure and record the results in the BOP medical records. Bolden has an emergency call button in his cell. SCU staff conducts checks for inmate well-being at intervals determined by an inmate's status, and checks are recorded in a log at the end of the unit range.[4]

---

[3] Bolden disputes the Defendants' assertion that the reason meals sometimes arrive at other times is due to emergencies or other situations within the prison. However, Bolden provides no evidentiary support for this contention, nor does he contend that the Defendants' evidentiary support is lacking. As such, Bolden has failed in his obligation to support allegedly controverted facts with citations to admissible evidence. *See Smith v. Lantz*, 321 F.3d 680, 682-83 (7th Cir. 2003); Local Rule 56-1(f).

[4] Bolden disputes this fact but does not provide evidence contradicting it or contend that the Defendants' evidentiary support is lacking.

### B.     Diet

The BOP offers inmates a "heart-healthy" selection. Bolden has received this diet food tray in the past. In May 2011, Michael Holliday, a registered dietician, met with Bolden. In April 2012, Bolden asked to be removed from the heart-healthy list and returned to the regular diet food tray. Dr. Wilson believes that Bolden would benefit from the heart-healthy diet.

Dr. Stuart Friedman, Bolden's medical expert, indicated that Bolden needs something outside of what a heart-healthy diet offers because a heart-healthy diet is not specific enough in terms of the recommendations regarding diabetes and chronic kidney disease. Dr. Friedman is aware in a general sense of what is in the prison's heart-healthy diet; however, Dr. Friedman has no knowledge of the diet or food that Bolden actually receives. Dr. Friedman was not aware that the American Diabetes Association recommends the use of a heart-healthy diet, nor does Dr. Friedman have knowledge of the dietary instruction provided to Bolden.

Bolden purchases food items from the commissary once a week. Examples of Bolden's 2014 purchases from the commissary include items such as 5 D-variety mini donuts, 10 iced cinnamon rolls, 5 chocolate chip cookies, 10 cinnamon raisin bagels, 10 Three Musketeers, 5 Snickers, and 3 Large Hershey with Almond bars. Dr. Wilson believes that many of the items Bolden purchases from the commissary are not conducive to a diabetic diet, and he has so advised Bolden.

### C.     Kidney Disease/High Blood Pressure

Bolden suffers from chronic kidney disease and high blood pressure.  Bolden was seen twice each year in 2013, 2014, and 2015 by Dr. Raj Jeevan, a contract physician who is board certified in internal medicine and nephrology. Dr. Jeevan prescribes medication for Bolden and makes recommendations for Bolden's medical care to Dr. Wilson. Bolden's creatinine level, a

6

blood test marker for kidney function, has been stable over the past six years, and Bolden's kidney disease has progressed much less than what Dr. Jeevan would have expected. During his April 2015 examination of Bolden, Dr. Jeevan found that Bolden's blood pressure seemed to be under poor control, but he deferred any change in medication given that Bolden's pressure a week earlier was 129/79.

### D.     Bolden's 2013 Fall

In April 2013, Bolden fell shortly after midnight. He was found unconscious or near unconscious and suffered an abrasion and bruises that were still visible 30 days later. Bolden received treatment for the April 2013 fall. In fact, he was treated by an emergency medical technician-paramedic. His blood sugar level was raised, and he was assessed for injuries. He was provided something to eat and an ice pack. A physician's assistant was contacted, and he ordered x-rays. Dr. Wilson was contacted by telephone that night, and he reviewed and co-signed the report two days later. However, Dr. Wilson testified two years later that he did not recall the specific event.

### E.     Dentures

Bolden also is dissatisfied with his dentures. Before February 2015, Bolden had not requested to see anyone for problems related to his dentures for at least two years, nor had he filed a request for administrative remedy related to his dentures for at least two years before February 2015. As of February 2015, the most recent Inmate Request to Staff submitted by Bolden relating to his dentures was in December 2009. In March 2010, Bolden's former attorney sent a letter acknowledging the provision of dentures to Bolden and the dentist's work with Bolden to ensure that the dentures fit properly. In April 2015, Bolden sent a complaint to Rupska about his dentures and asked for dentures that would fit without glue. The dental officer at USP

Terre Haute replied, advising Bolden that the limited ridges in Bolden's mouth would not allow dentures that would fit without adhesive. Accordingly, Bolden's request was denied.

### III.  DISCUSSION

For Bolden to survive summary judgment on his claim that the Defendants were deliberately indifferent to Bolden's serious medical needs, he is required to point to evidence of record from which a reasonable factfinder could find that (1) Bolden had an objectively serious medical need; and (2) the Defendants were deliberately indifferent to it. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). In moving for summary judgment, the Defendants concede that Bolden's type 1 diabetes is a serious medical need.

In *Gayton v. McCoy*, 593 F.3d 610 (7th Cir. 2010), the Seventh Circuit succinctly described the proof required to establish "deliberate indifference":

> [T]he plaintiff must show that the official acted with the requisite culpable state of mind. This inquiry has two components. The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk. Evidence that the official acted negligently is insufficient to prove deliberate indifference. Rather, deliberate indifference is simply a synonym for intentional or reckless conduct, and that "reckless" describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred. Simply put, an official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted.

*Id.* at 620 (internal quotations and citations omitted).

Even if the Defendants' prescribed course of treatment for Bolden's diabetes were to constitute malpractice, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In evaluating the evidence, we must remain sensitive to the line between malpractice and treatment that is so far out of bounds that it was blatantly inappropriate

8

or not even based on medical judgment . . . . [T]his is a high standard." *King v. Kramer*, 680 F.3d 1013, 1019 (7th Cir. 2012) (internal citations and quotations omitted).

Bolden's allegations do not indicate that the Defendants' actions crossed this line and violated his constitutional rights. To the contrary, the Defendants have provided him with regular insulin treatment as well as tests to monitor his blood sugar and other functions. He has a glucometer in his cell that he can use, and a nurse tests Bolden's blood sugar four times a day. Nothing in the pleadings indicates that the Defendants' course of treatment was not based on medical judgment, or that they recklessly disregarded a known risk of harm.[5] Bolden seeks to blame what he terms "Defendants' inadequate medical care" (Dkt. No. 114 at 9) for his hypoglycemic and hyperglycemic episodes; however, he experienced dramatic fluctuations in blood sugar even at the end of a ten-day hospital stay in 2010 (Dkt. No. 101-29). While the BOP does not dispute Bolden's factual assertion that its lack of expertise has led to hypoglycemic episodes that are more frequent and severe than Bolden would experience with expert care, the Constitution does not require that Bolden receive "'unqualified access to health care'" or the best care possible. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). To the contrary, the Eighth Amendment requires only the provision of "adequate medical care." *Boyce v. Moore*, 314 F.3d 884, 888–89 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

Nor has Bolden pointed to evidence by which a factfinder could find that the Defendants have deliberately withheld dietary accommodation that he needs. *See Sellers v. Henman*, 41 F.3d

---

[5] While Bolden points to Dr. Wilson's consideration of factors such as safety and availability in making medical decisions regarding an insulin pump, heart-healthy diet, or off-site medical visits for Bolden, he points to no evidence that would establish deliberate indifference with regard to these or any other decision by Dr. Wilson.

9

1100, 1103 (7th Cir. 1994). To the contrary, the Defendants have offered Bolden the heart-healthy diet that Dr. Wilson believes would benefit Bolden. Although Bolden believes that the heart-healthy diet would not adequately meet his needs, his mere disagreement with Dr. Wilson's medical judgment cannot sustain a claim of deliberate indifference. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (Disagreement with medical professionals about treatment needs cannot sustain an Eighth Amendment claim under the deliberate indifference standard of *Estelle*, 429 U.S. 97). Neither Bolden's beliefs nor Dr. Wilson's difference of opinion with Dr. Friedman about whether the heart-healthy diet is appropriate for Bolden supports a finding of deliberate indifference.

Moreover, Bolden's description of how the Defendants have responded to his conditions belies a characterization of deliberate indifference. Bolden acknowledges that he received regular medication and blood-sugar checks in response to his diabetes. When he does have a hypoglycemic episode, he receives prompt treatment and is monitored until his blood sugar rises. These episodes are reported to Dr. Wilson. Further, Bolden is visited by a board-certified nephrologist at least twice a year to monitor his kidney disease. Bolden's complaints about his dentures have been addressed. Rather than being ignored, Bolden receives prompt and adequate medical treatment. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997).

Nor do Bolden's other allegations rise to the level of deliberate indifference. Specifically, Bolden points to Dr. Wilson's failure to investigate what he terms the violations of the duty of care laid out in Bolden's Complaint. Bolden points specifically to Dr. Wilson's failure to investigate Bolden's allegations regarding the improper mixing of insulin by nurses and the rectal administration of glucose by nurses on two occasions. Bolden also points to Dr. Wilson's

10

lack of memory of Bolden's 2013 fall and other losses of consciousness.[6] However, because none of Bolden's allegations, singularly or in combination, rise to the level of deliberate indifference, the Defendants' failure to investigate the allegations in Bolden's complaint likewise does not constitute deliberate indifference.

Bolden also argues that the BOP failed to train SCU Manager Bayless on how to manage sick or disabled inmates. Bayless was not a medical staff member, and Bolden has pointed to no evidence that she was regularly present within the SCU or that she performed any medical or safety function.[7] Bolden also points to the failure of the BOP to train registered nurses in how to care for diabetic patients. However, he has not pointed to any evidence that demonstrates that the lack of additional training has resulted or will result in improper treatment of his diabetes.

### IV.    CONCLUSION

The undisputed evidence indicates that the Defendants have dedicated time and effort to monitor Bolden's medical conditions. Any minor deficiencies to which Bolden points have not exposed him to excessive risk. "The Constitution is not a medical code that mandates specific medical treatment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation and citation omitted). Bolden has failed to point to any shortcomings in his medical care that were either blatantly inappropriate or a substantial departure from accepted medical judgment. *King*, 680 F.3d at 1019. For these reasons, Bolden has not pointed to evidence sufficient to demonstrate that

---

[6] Bolden also alleges that the Defendants were deliberately indifferent for failing to properly follow and enforce BOP policies regarding the care of diabetics and the processing of inmate complaints about medical care. However, Bolden fails to point to evidence to demonstrate violations of BOP policy.

[7] Bayless was entitled to refer to and rely on the prison medical staff. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("[I]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.")

11

the Defendants' treatment constituted deliberate indifference. The Court, therefore, **GRANTS**

the Defendants' motion for summary judgment.

SO ORDERED: 3/8/16

*William T. Lawrence* (signature)

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.